# EXHIBIT "1"

UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOSE R. CASTRO, JORGE A. MORALES,             Case No. 15-cv-06561
JOSE LEON, ROBERTO A. ALVARENGA,
and MANUEL DE JESUS AREVALO LEON,
on behalf of themselves and other similarly
situated employees,

                   Plaintiff,

-against-

FIRST STREET MAGIC WASH & LUBE INC.,
dba FIRST STREET MAGIC WASH & LUBE, and
RENU OBHAN,

                   Defendants.
------------------------------------------------------------------X

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

THIS SETTLEMENT AGREEMENT AND MUTUAL RELEASE (this "**Agreement**") is made and entered as of the 31st day of March, 2016 (the "**Effective Date**"), by and between Jose R. Castro, Jorge A. Morales, Jose Leon, Roberto A. Alvarenga, and Manuel De Jesus Arevalo Leon ("**Plaintiffs**"), on the one hand, and First Street Magic Wash & Lube Inv., dba First Street Magic Wash & Lube, and Renu Obhan (collectively "**Defendants**"), on the other hand. Each of the Plaintiffs and the Defendants is referred to herein as a "**Party**," and they are collectively referred to herein as the "**Parties**."

**WHEREAS**, Plaintiffs are employees of one or more of the Defendants; and

**WHEREAS**, on or about August 19, 2015, Plaintiffs filed an action against the Defendants in the United States District Court for the Southern District of New York (the "**Court**"), styled *Castro, et al. v. First Street Magic Wash & Lube, Inc., et al.*, No: 15-cv-06561-CS-LMS (the "**Action**"); and

**WHEREAS**, the Defendants timely filed an Answer in the Action; and

**WHEREAS**, the Parties hereto now desire to settle all claims, differences or matters pertaining to or arising from or associated with the Action, including any and all counterclaims asserted therein, and any claims or potential claims arising out of Plaintiffs' employment or other relationships with any of the Defendants (the "**Subject Matter**") and without admission of liability or wrongdoing by any Party, such being expressly denied;

**NOW THEREFORE**, in consideration of the mutual covenants and releases contained herein and for good cause and valuable consideration, the Parties hereto agree as follows:

1. **Settlement Payment.** Within ten (10) business days after the date upon which this Agreement is approved and "so-ordered" by the Court (the "**Initial Payment Date**"), the Defendants shall pay to Plaintiffs, by check made payable to "Cilenti & Cooper, P.L.L.C., counsel for Plaintiffs", the sum of $15,000.00 (the "**Initial Payment**"). Within six (6) weeks after the Initial Payment Date (the "**Installment Payment Date**"), the Defendants shall pay to Plaintiff, by check made payable to "Cilenti & Cooper, P.L.L.C., counsel for Plaintiffs", the sum of $15,000.00 (the "**Installment Payment**"). The total amount of the Initial Payment and the Installment Payment shall be $30,000.00 (the "**Settlement Payment**").

2. **Default on Settlement Payment.** The failure of the Defendants to make full payment of either the Initial Payment or the subsequent Installment Payment on the appropriate dates, shall be considered an event of default under this Agreement (an "**Event of Default**"). In the event that an Event of Default takes place, counsel for Plaintiff shall promptly notify counsel for the Defendants of such Event of Default pursuant to the Notice terms set forth *infra.* in this Agreement (the "**Notice of Event of Default**"). The Defendants shall have fourteen (14) calendar days from the date of the Notice of Event of Default to cure such Event of Default (the "**Cure Period**").

3. **Dismissal of Action.** Concurrently with the execution of this Agreement, the Parties to the Action will execute a "Stipulation and Order of Dismissal," which will request dismissal of the Action with prejudice in the form annexed hereto as **Exhibit A** (the "**Dismissal Stipulation**"). Within seven (7) business days after the clearance of the Installment Payment, Plaintiffs shall file the Dismissal Stipulation with the Court. The Court shall continue to hold jurisdiction over this matter and plaintiffs shall have the right to restore the case only in the event of default for nonpayment.

4. **No Other Pending Proceedings.** The Parties represent and warrant that they have filed no other claims, counterclaims, or third party claims in court, arbitration, or in any other forum relating to the Subject Matter of this Agreement (other than those described above), and further represent and warrant that they do not know of any such claims.

5. **Releases.** Except for those obligations of the Defendants under this Agreement (which are expressly limited to the obligations set forth herein, including the obligation to make the Settlement Payment), in consideration of the covenants and agreements set forth in this Agreement, Plaintiffs hereby release and discharge and covenant not to sue the Defendants and each of their past, present and future parents, agents, representatives, shareholders, principals, attorneys, affiliates, parent corporations, subsidiaries, officers, directors, employees, in both their corporate and individual capacities, predecessors and successors and heirs, executors and assigns (individually and collectively, "**Releasees**") from and with respect to any and all claims, wages, agreements, obligations, demands and causes of action, known or unknown, suspected or unsuspected, concealed or hidden (collectively, "**Claims**"), of any kind whatsoever, including, without limitation, any existing Claims arising out of or in any way connected with Plaintiffs' employment

relationship with the Defendants, any Claims for severance pay, bonus or similar benefit, sick leave, pension, retirement, vacation pay, life insurance, health or medical insurance or any other fringe benefit, any benefits arising from any ERISA benefit plan, workers' compensation or disability, any other Claims resulting from any act or omission by or on the part of Releasees committed or omitted prior to the date Plaintiffs execute and deliver this release and covenant not to sue (the "**Effective Date**"), and any Claims under Title VII of the Civil Rights Act of 1964, Civil Rights Act of 1991, the Americans with Disabilities Act, the Family and Medical Leave Act, the California Fair Employment and Housing Act, the California Labor Code or any other federal, state or local law, regulation or ordinance. This release does not prevent Plaintiffs from filing a charge with or participating in an investigation by a governmental administrative agency; provided, however, that Plaintiffs waive any right to receive any monetary award resulting from such a charge or investigation.

The releases set forth in this section of this Agreement are intended to be effective as a bar to all Claims as stated therein, whether known and unknown. Accordingly, Plaintiffs hereby expressly waive any rights and benefits, including those which they do not know or suspect to exist in their favor at the time of executing this Agreement, which if known by them might have materially affected their settlement with the Defendants.

Plaintiffs further represent and warrant that neither Plaintiffs nor any person, firm or entity acting on their behalf or for their benefit has filed any complaints, charges, or lawsuits with any court or government agency, or commenced any arbitration proceeding, relating to any of the "Claims" released pursuant to this Agreement.

The Defendants likewise hereby acknowledge, release and discharge the Plaintiffs, the Plaintiffs' heirs executors, administrators, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever (other than those arising under the terms of this Agreement), in law, admiralty or equity, which against the Plaintiffs, the Defendants, the Defendants' past, present and future parents, agents, representatives, shareholders, principals, attorneys, affiliates, parent corporations, subsidiaries, officers, directors, employees, in both their corporate and individual capacities, predecessors and successors and heirs, executors and assigns ever had, now have, or hereafter can, shall or may, have for, upon, or by reason of any matter, cause or things (other than those arising under the terms of this Agreement) from the beginning of the world to the day of the date of this Agreement.

6. **Confidentiality.** Except as otherwise provided in this Section, each of the Parties agree that neither they nor their representatives shall disclose, disseminate or publicize this Agreement or its terms to any individual or entity not a party to this Agreement. Upon inquiry, the Parties may only inform the inquiring party that a mutually satisfactory settlement has been reached. Notwithstanding the foregoing, this Agreement may be disclosed: (a) upon written consent of all of the Parties; (b) in response to an order of a

court of competent jurisdiction following reasonable notice to the other Parties in accordance with the notice provisions set forth in Section 20 hereof; (c) in response to any inquiry or order issued by a state or federal agency of competent jurisdiction provided that the receiving Party gives reasonable notice to the other Parties in accordance with the notice provisions set forth in Section 21 hereof; (d) to the extent necessary, to appropriate taxing authorities; (e) to any Party's accountants, attorneys, financial advisors and/or tax advisors, and then only upon the agreement of the above referenced third-parties to maintain the confidentiality of this Agreement; or (f) in connection with the enforcement of this Agreement. It is understood and agreed that if the foregoing provision is breached by any Party hereto, the non-breaching Party will be irreparably harmed and may be entitled to injunctive or other equitable relief to redress such breach, and shall be entitled to the return of any payments made under this Agreement. The right to seek injunctive relief under this paragraph shall be in addition to all other rights, remedies and forms of relief which may be available.

7. **No Admission of Liability.** In no event shall this Agreement, or any of its provisions, or any negotiations, statements, or proceedings relating to it, be construed in any way as, offered as, received as, used as, or deemed to be an admission or concession by any Party of any liability or wrongdoing and shall not be used as evidence of any kind in any action, investigation or proceeding, whether judicial, administrative or otherwise, except as necessary for the enforcement and/or implementation of the terms of this Agreement, or as proof of this Agreement. The Parties expressly deny any wrongdoing or violation of any legal or contractual duty or other obligation in connection with the allegations set forth in the pleadings in the Action.

8. **Non-Disparagement.** The Parties agree that they will not disparage or encourage or induce others to disparage each other or any of the Parties' employees, directors or shareholders as a group, in any way, including but not limited to making any derogatory statements in verbal, written, electronic or any other form about each other or any of the Parties' employees, directors or shareholders as a group. The foregoing includes, but is not limited to, any derogatory statement made in, or in connection with, any article or book, on a website, in a chat room or via the Internet.

9. **Opportunity to Consult Counsel/Voluntary Agreement.** Each of the Parties acknowledges that it has been advised to and has, in fact, consulted with independent, competent counsel with regard to this Agreement and the subject matter hereof. Each of the Parties further represents that it has signed this Agreement voluntarily and with a full understanding of its terms and conditions.

10. **Authority.** Each Party that is an entity whose signature is affixed hereto represents and warrants that the individual signing this Agreement on its behalf is authorized to do so on behalf of such entity and that he/she is acting in the scope of such agency and authority. Each Party specifically represents and warrants that no signatures other than those made on this Agreement are necessary to bind such Party to all of its obligations imposed by, and releases under, this Agreement.

11. **Governing Law and Attorneys' Fees**. This Agreement and any other documents referred to herein shall be governed by, construed, and enforced in accordance with the laws of the State of New York without regard to conflicts of laws principles. The Parties consent to the jurisdiction of the Court for any application or action to enforce the terms of this Agreement and that venue shall be the sole forum for such disputes; provided, however, that if the Court does not have subject matter jurisdiction, the Agreement may be enforced in any court of competent jurisdiction in New York. The Parties agree that any breach of this Agreement shall entitle any Party to bring a claim for damages; further, the prevailing Party shall be entitled to recover reasonable attorneys' fees and costs as part of any such action.

12. **Binding Effect**. This Agreement shall be binding upon and inure to the benefit of the Parties hereto for themselves and their respective heirs, affiliates, trustees, executors, administrators, representatives, successors and assigns, and each of their respective current and former officers, directors, shareholders, members, employees (in both their individual and official capacities), and each of the foregoing's successors, predecessors, assigns, agents, employees and attorneys. No Party shall be permitted to assign this Agreement without the prior written consent of the other Parties.

13. **Severability**. If any provision, or the enforcement of any provision, of this Agreement is held by a court of competent jurisdiction to be invalid, unenforceable or illegal, in whole or in part, in any respect, that holding shall not affect the validity and/or enforceability of any other provision of this Agreement.

14. **Entire Agreement/Amendments**. This Agreement constitutes the entire agreement by, between and among the Parties with respect to the subject matters referred to herein and supersedes any other prior written or verbal understanding or agreement by, between or among them. There are no promises, inducements, representations, warranties, understandings, undertakings or agreements, oral or written, express or implied, by, between or among the Parties, except as specifically set forth herein. This Agreement may not be amended, canceled, revoked or otherwise modified except by written agreement subscribed by all of the Parties.

15. **Counterparts**. This Agreement may be executed in counterparts, each of which shall be deemed an original, and all counterparts so executed shall constitute one agreement binding on all of the Parties, notwithstanding that all of the Parties may not be a signatory to the same counterpart. This Agreement may be executed by facsimile or email transmittal and such signatures shall be binding and deemed original for purposes of enforcing this Agreement.

16. **No Waiver**. The failure of any of the Parties to insist upon strict adherence to any term of this Agreement on any occasion shall not be considered a waiver thereof nor deprive such Party of the right thereafter to insist upon strict adherence to that term or any other term of this Agreement.

17. **Headings and Syntax**. The headings set forth in this Agreement are for convenience and reference only and are not intended to modify, limit, describe or affect in any way the

content, scope or intent of this Agreement. All references made and pronouns used shall be construed in the singular or the plural and in such gender as common sense and circumstances require.

18. **Construction.** Each of the Parties agrees that it or he or she, as applicable, has participated in the drafting and negotiation of this Agreement, and that the rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement.

19. **No Assignment, Sale, Transfer or Other Disposition.** Each of the Parties hereby warrants and represents on behalf of itself or himself or herself only that it or he or she, as applicable, has not assigned, transferred, or conveyed in any manner all or any part of the actions, causes of action, claims, demands, obligations, damages, debts, accounts, costs, expenses, liens, compensation, and liabilities released by it or he under this Agreement, and to the extent any party is found to be in violation of the foregoing warranty and representation such party hereby covenants and agrees to defend, indemnify and hold harmless the persons and entities herein released from and against any and all losses resulting in any way from such assignment, transfer, or lien or purported or alleged assignment, transfer, or lien.

20. **Notices.** All notices, requests, demands, claims or other communications required or permitted to be delivered, given or otherwise provided hereunder must be in writing and must be delivered personally, delivered by a nationally recognized overnight courier service providing proof of delivery, sent by certified or registered mail, postage prepaid, or by facsimile (subject to electronic confirmation of good facsimile transmission), or by email, addressed to each of the Parties as specified below (or to such other address as a party may designate by like notice):

For Plaintiffs:  Stephen H. Penn
Norris McLaughlin & Marcus, P.A.
875 Third Ave., 8th Floor
New York, NY 10022
Fax: 212-808-0844
Email Address:
shpenn@nmmlaw.com

For the Defendants:  Peter H. Cooper
Cilenti & Cooper, P.L.L.C.
708 Third Ave., 6th Floor
New York, NY 10017
Email Address:
pcooper@jcpclaw.com

21. **Survival.** The obligations, representations, warranties, releases and other provisions of this Agreement shall survive the execution of this Agreement, dismissal of the Action and the consummation of the transactions described in this Agreement.

22. **No Third-Party Beneficiaries**. No provision of this Agreement will be deemed or construed in any way to result in the creation of any right or obligation in any person not a party to this Agreement.

IN WITNESS WHEREOF, the Parties have agreed to this Agreement consisting of __9__ pages and have caused this instrument to be properly executed as of the date written below.

*[Signature page follows.]*

**ROBERTO A. ALVARENGA**

*Roberto Alvarenga*
Roberto A. Alvarenga

Sworn and subscribed to before me this 21st day of July, 2016

_____
Notary Public

PETER H. COOPER
Notary Public, State of New York
No. 02CO5059941
Qualified in New York County
Commission Expires MAY 6, 20 18

**MANUEL DE JESUS AREVALO LEON**

*Mleon*
Manuel De Jesus Arevalo Leon

Sworn and subscribed to before me this 21st day of July, 2016

_____
Notary Public

PETER H. COOPER
Notary Public, State of New York
No. 02CO5059941
Qualified in New York County
Commission Expires MAY 6, 20 18

**FIRST STREET MAGIC WASH & LUBE, INC., dba FIRST STREET MAGIC WASH & LUBE**

By: _____
Name: JASBIR OBHAN
Title: PRES.

Sworn and subscribed to before me this 24 day of June, 2016

_____
Notary Public

KAREN A. HURWITZ
Notary Public, State of New York
No. 01HU4881448
Qualified in Nassau County
Commission Expires December 22, 20 18

**RENU OBHAN**

*K.J Obhan*
Renu Obhan

Sworn and subscribed to before me this 24 day of June, 2016

_____
Notary Public

KAREN A. HURWITZ
Notary Public, State of New York
No. 01HU4881448
Qualified in Nassau County
Commission Expires December 22, 20 __

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the day and year first above written:

**JOSE R. CASTRO**

*Jose Castro*
_____
Jose R. Castro

Sworn and subscribed to before me this 21st day of July, 2016

_____
Notary Public

PETER H. COOPER
Notary Public, State of New York
No. 02CO5059941
Qualified in New York County
Commission Expires MAY 6, 2018

**JORGE A. MORALES**

_____
Jorge A. Morales

Sworn and subscribed to before me this 21st day of July, 2016

_____
Notary Public

PETER H. COOPER
Notary Public, State of New York
No. 02CO5059941
Qualified in New York County
Commission Expires MAY 6, 2018

**JOSE LEON**

*JRL*
_____
Jose Leon

Sworn and subscribed to before me this 21st day of July, 2016

_____
Notary Public

PETER H. COOPER
Notary Public, State of New York
No. 02CO5059941
Qualified in New York County
Commission Expires MAY 6, 2018